Filed 1/12/25  In re I.D. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re I.D., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B345590 (Super. Ct. No. 17JV00056-F) (Santa Barbara County) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>I.D.,<br><br>    Defendant and Appellant. | |

I.D. was charged with a gang-related murder committed when he was 17 years old.  He appeals from the juvenile court's order transferring him to a court of criminal jurisdiction pursuant to Welfare and Institutions Code section 707.[1]  He

---

[1]  All further undesignated statutory references are to the Welfare and Institutions Code.

contends the juvenile court abused its discretion because the order is not supported by substantial evidence.  We disagree and affirm.

*Facts of the Alleged Offense*[2]

In December 2018, Santa Maria police responded to a call after the reporting party advised there had been a gunshot in the area.  Upon arrival, the officer found 18-year-old Adrian Alvarez lying on the curb, bleeding.  He had a gunshot wound to the face.  A spent 12-gauge shotgun shell was located near him.  After medics arrived on scene, Alvarez was pronounced dead.

Police conducted an investigation, interviewed witnesses, and obtained numerous search warrants to review social media posts.  Over the course of their investigation, police found various messages and online posts, including a rap song posted to YouTube, that referenced an ongoing feud between the Guadalupe and West Park criminal street gangs.  Appellant, who was a known associate of the Guadalupe criminal street gang, was identified as a possible suspect.

In July 2022, a witness who was present with the victim the night of the shooting agreed to speak with police.  The witness reported that he was sitting with Alvarez inside a vehicle when three subjects approached them on foot and called out "Guad" or "Guadalupe."  Two of the subjects were wearing masks.  The witness identified the third subject, who was not wearing a mask, as appellant.  The witness and Alvarez exited the vehicle and identified themselves as "West Park."  Appellant approached Alvarez, discharged a "sawed off shot gun" in the victim's face, and fled the scene with his two companions.

---

[2] These facts are summarized from the Fitness Transfer Report.

*Section 602 Petition*

In 2023, the People filed a petition in juvenile court charging appellant, who was 21 years old by that time, with murder.  (Pen. Code, 187, subd. (a).)  The petition alleged that appellant committed the offense for the benefit of or in association with a criminal street gang and that he intentionally and personally discharged a firearm causing death.  (Pen. Code, §§ 186.22, subd. (b)(5), 12022.53, subd. (d).)  The People also filed a motion pursuant to section 707, subdivision (a) to transfer appellant to adult criminal court.

*Transfer Hearing*

The juvenile court conducted a contested transfer hearing. The People called four witnesses, including Dr. Amy Watt, a clinical psychologist who evaluated appellant and prepared a written report.

Dr. Watt met in person with appellant at the Juvenile Justice Center (JJC), administered several psychological tests, and reviewed various reports.  Based on her evaluation, Dr. Watt found no discernable issues regarding appellant's childhood. Appellant denied any behavioral issues at school, but Dr. Watt found this to be inconsistent with the records she reviewed.

Dr. Watt believed appellant minimized the seriousness of his behavioral issues, which was a "theme" throughout their interview.  This was a "big concern" for her in terms of appellant's amenability to rehabilitation because it indicated a resistance to change.  Appellant also minimalized his gang affiliation, was "cagey" when asked about it, and described it simply as "friends hanging out."  Dr. Watt opined if appellant were released, he would likely go back to the gang because he did not see it as a problem.

Dr. Watt also reviewed appellant's social media profile and messages, which she believed demonstrated planning and criminal sophistication. For example, she testified there were discussions "at length" about how to get a shotgun, how to stash a gun, and hunting down rival gang members.

When Dr. Watt asked appellant about the present case, he said he was "in the wrong place at the wrong time." This was a concern because Dr. Watt did not sense any remorse or empathy in appellant. He was quick to change the subject and talked about being a "changed man" because he was focused on school and becoming a social worker. He also talked about wanting to stay in the juvenile system so he could "do less time" and get out to be with his family.

Dr. Watt did not believe the services appellant had received while on juvenile probation had been effective in rehabilitating him because he continued to possess a firearm, post images of gang signs on social media, and associate with a gang.

Dr. Watt did not find any evidence of neurological issues based on the various tests she administered to appellant. She indicated he was "hasty" and "careless" in approaching the test items, which was likely related to his impulsive behavior. His responses were also indicative of someone who wants to "show off" and be "strong," which reflected his self-esteem and insecurity.

Dr. Watt concluded that the gravity and circumstances of the offense were very serious. Based on the five factors set forth in section 707, subdivision (a), she did not believe 18 months was a sufficient amount of time to rehabilitate appellant. Dr. Watt ultimately concluded that appellant was not amenable to rehabilitation under the jurisdiction of the juvenile court.

The People also presented additional evidence, including appellant's cell phone data and location on the night of the shooting, an image of appellant's new "Guadalupe" tattoo, which he said he "earned," and several images of appellant throwing up gang signs, including at the memorial site where Alvarez was killed.

The defense presented several witnesses, including Dr. Carolyn Murphy, a forensic psychologist who interviewed appellant, reviewed various reports, and prepared a written report. Dr. Murphy opined that appellant's prior delinquent history was "relatively low-level"; there were no prior attempts to rehabilitate him because no "comprehensive" psychological evaluation and treatment plan had been created; appellant was participating in services, was on the "Trust Unit," and demonstrated an "openness to change." Dr. Murphy believed appellant was amenable to rehabilitation in the time remaining with the juvenile system.

*The Juvenile Court's Ruling*

In April 2025, the juvenile court granted the motion to transfer appellant's case to adult criminal court. In a detailed oral ruling, the juvenile court acknowledged the People's burden to prove, by clear and convincing evidence, that appellant was not amenable to rehabilitation while under the jurisdiction of the juvenile court. The juvenile court analyzed each of the five statutory factors set forth in section 707, found each weighed in favor of transfer, and concluded the People met their burden.

Degree of Criminal Sophistication

The juvenile court found appellant exhibited a "criminal sophistication" that weighed in favor of transfer. The juvenile court cited appellant's age, the degree of "planning," and the

"callous" and "indifferent" manner in which appellant carried out the murder—he walked up to the victim, who he had been planning to kill, and "point-blank" fired a shotgun. The juvenile court cited a lack of evidence of mental health or intellectual issues, trauma, or abuse in appellant's life. It also observed that "it took years" for law enforcement to resolve this case "because of [appellant's] efforts in avoiding detection," which "support[ed] the sophistication criteria."

Amenability to Rehabilitation Prior to Expiration of Juvenile Jurisdiction

In considering this factor, the juvenile court found Dr. Watt's testimony to be "particularly persuasive" and "afford[ed it] great weight." Like Dr. Watt, the juvenile court found appellant "minimalize[d]" the offense, stated he was "in the wrong place at the wrong time," continued with his gang activities even after the murder, and showed "no insight" into the severity of the offense. The juvenile court acknowledged that appellant had done well in JJC but found there was insufficient time to rehabilitate him before expiration of juvenile court jurisdiction.

Previous Delinquent History[3]

The juvenile court disagreed with probation and found this factor weighed in favor of transfer, although it did not attach "as much weight" to it as the other factors. The juvenile court noted that appellant "appeared to [have] a reasonably happy childhood." Appellant's delinquent history was not "particularly long." However, there was evidence of "serious gang behavior,"

---

[3] The probation officer prepared a report and testified that three of the five factors supported transfer. Probation did not believe the third or fourth factors (i.e., previous delinquent history and previous attempts to rehabilitate) supported transfer.

6

including the present offense and an adult conviction for felony firearm possession.

Success of Previous Attempts to Rehabilitate Minor

In finding this factor weighed in favor of transfer, the juvenile court noted that appellant committed the instant offense while he was on "wardship probation." Although appellant successfully completed juvenile probation, he continued his gang activities into adulthood and failed to rehabilitate within the juvenile court system. Appellant's lack of insight and failure to acknowledge his gang involvement were "significant" to the juvenile court in finding appellant was not amenable to rehabilitation while under the juvenile court's jurisdiction.

Circumstances and Gravity of the Offense Alleged in the Petition

The juvenile court observed that the evidence was "overwhelming" that this was a very serious offense. The circumstances involved "premeditation, callousness, and indifference to the victim." After surveilling the area and engaging with his gang members to locate the victim, appellant "simply walked up to the victim" and "callously sho[t]" him in the face with a shotgun.

*Discussion*

Appellant contends the juvenile court erred in finding that clear and convincing evidence supports the transfer to criminal court. We review the juvenile court's determination to transfer a minor to criminal court for abuse of discretion. (*In re J.S.* (2024) 105 Cal.App.5th 205, 211 (*J.S*).) "The court's factual findings are reviewed for substantial evidence, and its legal conclusions are reviewed de novo. [Citation.] A decision based on insufficient evidence or the court's "'erroneous understanding of applicable

7

law'" is subject to reversal. [Citation.]" *(Kevin P. v. Superior Court* (2020) 57 Cal.App.5th 173, 187.)

Section 707 provides that the People may move to transfer to adult court any minor 16 years of age or older alleged to have committed one of several enumerated offenses, including murder. (§ 707, subds. (a)(1), (b)(1); *D.W. v. Superior Court* (2019) 43 Cal.App.5th 109, 116.) To prevail on this motion, the People must establish, by clear and convincing evidence, that the minor is "not amenable to rehabilitation while under the jurisdiction of the juvenile court." (§ 707, subd. (a)(3); *In re S.S.* (2023) 89 Cal. App.5th 1277, 1288 ['"amenab[ility] to rehabilitation"' is the "ultimate determination"]; *J.S.*, *supra*, 105 Cal.App.5th at p. 212 [same].)

In making this determination, the juvenile court must consider five specific factors: (1) "[t]he degree of criminal sophistication exhibited by the minor" (§ 707, subd. (a)(3)(A)(i)); (2) "[w]hether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction" (*id.*, subd. (a)(3)(B)(i)); (3) "[t]he minor's previous delinquent history" (*id.*, subd. (a)(3)(C)(i)); (4) "[s]uccess of previous attempts by the juvenile court to rehabilitate the minor" (*id.*, subd. (a)(3)(D)(i)); and (5) "[t]he circumstances and gravity of the offense alleged in the petition to have been committed by the minor" (*id.*, subd. (a)(3)(E)(i)).

The statute also sets forth a nonexhaustive list of relevant factors for the juvenile court to consider with respect to each of the five criteria. (§ 707, subds. (a)(3)(A)(ii), (B)(ii), (C)(ii), (D)(ii), (E)(ii).) If the juvenile court orders a transfer to criminal court, it must "recite the basis for its decision in an order entered upon the minutes, which shall include the reasons supporting the

court's finding that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (*Id.*, subd. (a)(3).)

*Substantial Evidence/Abuse of Discretion*

Appellant contends the decision to transfer him to criminal court is not supported by substantial evidence and therefore the juvenile court abused its discretion in granting the transfer motion. Appellant raises a number of contentions, including: (1) Dr. Watt unreasonably concluded that appellant "minimalized" his past delinquent and criminal conduct because any "downplaying of the circumstances" or reluctance to speak with "full candor" was reasonable given that appellant was concerned about self-incrimination; (2) the prior true findings/criminal convictions for possession of firearm should not be held against him in evaluating his ability to rehabilitate because there is a "vast chasm-like" distinction between an arrest and true finding or conviction for firearm possession and murder; (3) the absence of a history of trauma or abuse does not mean appellant is not amenable to rehabilitation as a youth, especially given that he has a wife and young daughter, has been accepted to and is attending university, and seeks a career as a social worker; and (4) appellant's desire for adjudication in the juvenile court so that he can be released sooner does not lead to an absence of amenability.

But appellant's contentions boil down to a request for this court to reweigh the evidence and come to a different conclusion than the juvenile court. We are not at liberty to do so. As we have previously explained, "we do not reweigh the evidence and we do not substitute our discretion for the discretion exercised by the trial court." (*J.S.*, *supra*, 105 Cal.App.5th at p. 211.)

9

Here, the juvenile court considered all the evidence presented and found Dr. Watt's testimony to be particularly persuasive and afforded it great weight. Moreover, the juvenile court properly focused on the key question of whether appellant was amenable to rehabilitation while under the juvenile court's jurisdiction. It examined each of the five statutory criteria, discussed the relevant factors thereto, and ultimately found, by clear and convincing evidence, that appellant was not amenable to rehabilitation before expiration of juvenile court jurisdiction.

We conclude substantial evidence supports the juvenile court's findings for the reasons articulated in its oral ruling. The juvenile court therefore reasonably exercised its discretion to transfer appellant to adult criminal court. As such, there was no error.

*Disposition*

The order is affirmed.

NOT TO BE PUBLISHED.


YEGAN, Acting P. J.


We concur:



BALTODANO, J.



CODY, J.


10

Gustavo Lavayen, Judge
Superior Court County of Santa Barbara

_____

Courtney M. Selan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and Deepti Vaadyala, Deputy Attorney General, for Plaintiff and Respondent.